

Entered on Docket
August 31, 2006

_____
**Hon. Bruce A. Markell
United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re:<br><br>7-HILLS RADIOLOGY, LLC,<br><br>  Debtor. | Case No.: BK-S-06-11926-BAM<br>Chapter 11<br><br><br>Date:  N/A<br>Time:  N/A |

**Opinion**

7-Hills Radiology, LLC, the debtor and debtor in possession in this case, filed a chapter 11 petition on August 2, 2006. The petition was what is commonly referred to as "bare-bones"; it listed the debtor's creditors, but did not provide any schedules of assets or liabilities, or a statement of financial affairs. The face page of the petition indicated that debtor was a health care business. Were that true, Section 333(a)(1) of the Bankruptcy Code would require the appointment of a patient care ombudsman "not later than 30 days after the commencement of the case." 11 U.S.C. § 333(a)(1).[1] Although INTERIM FED. R. BANKR. P. 1021 indicates that such a designation means that "the case shall proceed as a case in which the debtor is a health care business," it also states that this directive is subject to the court's ordering "otherwise." *Id.* Without any other clues to the debtor's exact business, the court exercised its discretion to order "otherwise," and required the debtor to show

---

[1] Section 333 was added to the Bankruptcy Code in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). Pub. L. 109-8, § 1104(a)(1), 119 Stat. 23, 191 (2005).

cause, before the expiration of the 30-day period, as to why it was a "health care business." The court took this step as a patient care ombudsman and the other consequences of being a health care business entail significant and additional costs.[2]

In response to the order to show cause, the debtor changed its position, and contended that it was not a health care business. Its managing member provided a declaration that stated that 7-Hills gives radiological tests only to patients who are referred by treating physicians, and that after the tests are given, 7-Hills does not advise the patients of the test results. Instead, it simply sends the reports to the treating physician, who reviews them with the patient. 7-Hills does not keep the patient's records; they are also maintained by the referring physician.

Does this activity make the debtor a "health care business"? The Bankruptcy Code defines such a business in 11 U.S.C. § 101(27A), a section added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.[3] That section provides:

(27A) The term "health care business"—

    (A) means any public or private entity (without regard to whether that entity is organized for profit or not for profit) that is primarily engaged in offering to the general public facilities and services for—

---

[2] Other consequences follow from the designation of a debtor as a health care business. Under the revisions to the Bankruptcy Code, health care business are restricted in the way in which they may dispose of patient records, 11 U.S.C. § 351, and the manner in which they must transfer patients, 11 U.S.C. § 704(a)(12). There is also a special administrative priority granted to the winding up of such businesses, 11 U.S.C. § 503(b)(8), and an exemption from the automatic stay for such business' participation in medicare, 11 U.S.C. § 362(b)(28). *See also* INTERIM FED. R. BANKR. P. 2015.1 (requiring certain reports of a patient care ombudsman); 2015.2 (regulating transfer of patients by a health care business); 6011 (regulating disposal of patient records by a health care business). *Cf.* 11 U.S.C. § 330(a) (listing patient care ombudsmen as professionals entitled to apply for compensation from property of the estate).

Also applicable would be INTERIM FED. R. BANKR. P. 2007.1, which states the procedure for appointing a patient care ombudsman. Inasmuch as the statute states that an ombudsman need only be appointed within the first 30 days of the case, and given that the court held its show cause hearing within that 30 day period, the court did not require immediate compliance with this rule until it could determine whether 7-Hills was a health care business.

[3] Pub. L. 109-8, § 1101(a), 119 Stat. 23, 189 (2005).

      (i) the diagnosis or treatment of injury, deformity, or disease;

      and

      (ii) surgical, drug treatment, psychiatric, or obstetric care . . . .

    7-Hills argues persuasively that, despite its initial indication, it is not a "health care business" within this definition. Its principal argument is that it is not "engaged in the offering to the general public" of any services. As established by the declaration of its managing member, 7-Hills performs radiological services only at the request of a referring physician. No member of the general public may walk in and request an X-ray or any other procedure 7-Hills performs.

    It might be contended that 7-Hills' treatment of any and all persons referred to it constitutes treating the "general public." While that may be so, that reading does not give adequate weight to the words Congress used: a health care business is "engaged in offering to the general public" certain facilities and services. 7-Hills does not offer anything to the general public. Instead, it offers its services and facilities to referring physicians only. This limitation of its business to referring physicians takes it out of the definition of health care business.[4]

    This reading is confirmed by application of the venerable canon and aid to general construction of *noscitur a sociis*, or roughly, "it is known from its associates." Neal v. Clark, 95 U.S. 704, 708 (1878) ("'In the construction of statutes, likewise, the rule *noscitur a sociis* is very frequently applied; the meaning of a word, and, consequently, the intention of the legislature, being ascertained by referance [*sic*] to the context'"), *quoting* BROOM'S LEGAL MAXIMS. Under this canon, courts look to the language surrounding – or associated with – the language in question to determine the meaning of a disputed word or phrase. While "canons of construction are no more than rules of thumb that help

---

[4]Two other federal statutes use the term "offering to the general public," but neither is helpful here. *See* 5 U.S.C. § 5702(b) (federal employee may retain promotional benefit from travel provider (such as frequent flyer miles) only if "the promotional item is obtained under the same terms as those *offered to the general public* and at no additional cost to the Federal Government"); 42 U.S.C. § 2297h-9 (prohibiting officers and directors of the United States Enrichment Corporation from obtaining shares of the privatization of the corporation "on terms more favorable than those *offered to the general public*").

3

courts determine the meaning of legislation," Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253(1992), they can, in cases such as this, serve as guides to the best common understanding of the term at issue. The canon of *noscitur a sociis* is apt here,[5] to use the words of the Court, because it assists the court in avoiding giving "one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." Gustafson v. Alloyd Co., 513 U.S. 561, 575 (1995) (internal quotations omitted).

Here, subparagraph (B) of Section 101(27A) would seem to indicate a restrictive range for health care businesses. In particular, that subparagraph states that the following types of businesses are included in the definition of health care business:

(i) any—

    (I) general or specialized hospital;

    (II) ancillary ambulatory, emergency, or surgical treatment facility;

    (III) hospice;

    (IV) home health agency; and

    (V) other health care institution that is similar to an entity referred to in subclause (I), (II), (III), or (IV); and

(ii) any long-term care facility, including any—

    (I) skilled nursing facility;

    (II) intermediate care facility;

    (III) assisted living facility;

    (IV) home for the aged;

    (V) domiciliary care facility; and

---

[5]It is probably not the case that the maxim *ejusdem generis* ("Of the same kind, class, or nature") applies here, since its use is typically restricted to instances in which general words follow an enumeration of specific items, not the specification of a general standard followed by narrow examples as is the case here. Under *ejusdem generis*, the general words are read as applying to other items akin to those specifically enumerated.

(VI) health care institution that is related to a facility referred to in subclause (I), (II), (III), (IV), or (V), if that institution is primarily engaged in offering room, board, laundry, or personal assistance with activities of daily living and incidentals to activities of daily living . . .

This language indicates that the type of health care businesses that were the primary targets of the definition were businesses that had some form of direct and ongoing contact with patients to the point of providing them shelter and sustenance in addition to medical treatment. That is the almost inescapable conclusion one draws from the focus on institutions in which patients are housed and treated.

It is true that the term "includes," which precedes subparagraph (B), is not exclusive, 11 U.S.C. § 102(3), and thus entities other than those who provide direct and ongoing patient care may be within the definition. But if they are covered, they have to be in the business of "offering to the general public" such services. Given the examples Congress used after the general definition of "health care business," it would appear that businesses such as 7-Hills that restrict their clientele are not to be counted as "health care businesses."

Alternatively, debtor might argue that it is not in the business of **both** "diagnosis or treatment of injury, deformity, or disease" **and** "surgical, drug treatment, psychiatric, or obstetric care," as the statute would seem to require, given Congress' use of the conjunction "and" between clause (i) and clause (ii). The court does not reach that issue, however, given the restrictive scope of debtor's business practices. *But see In re* TCR of Denver, LLC, 338 B.R. 494 (Bankr. D. Colo. 2006) (use of conjunction "and" in Section 1112(b) should be read as disjunctive "or").

Therefore, this Court concludes that no cause exists to believe that debtor is a "health care business," and no patient care ombudsman shall be appointed.

Copies sent to:

Michael J. Dawson, mdawson@lvcoxmail.com

U.S. Trustee - LV - 11 USTPRegion17.lv.ecf@usdoj.gov

5

1  August Landis
   United States Trustee
2  300 Las Vegas Blvd. South, #4300
   Las Vegas, NV 89101
3

4
5                                    # # #
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26